# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCER OUTDOOR ADVERTISING, LLC,<br>Plaintiff,<br><br>v<br><br>CITY OF HERMITAGE, PENNSYLVANIA,<br>Defendant. | )<br>)<br>)<br>) 2:13-cv-1041<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 12), filed by Defendant City of Hermitage, Pennsylvania ("Hermitage") with brief in support. Plaintiff Mercer Outdoor Advertising, LLC ("Mercer") filed a brief in opposition; Hermitage filed a reply brief; and the motion is ripe for disposition.

Factual and Procedural Background

Mercer is in the commercial business of posting signs to disseminate messages. In this case, Mercer presents constitutional challenges to a municipal zoning ordinance. In the First Amended Complaint, Mercer asserts that the owners of several properties adjacent to the most heavily trafficked commercial corridors have authorized it to file applications with the City of Hermitage to place signs on their properties. On June 21, 2013 Mercer submitted six application packages to Hermitage, in each case identifying the proposed sign as a "billboard," as defined in Section 202 of the City Zoning Ordinance. City Planning Technician Nathan Zampogna rejected each application, citing Section 306.10 (Permitted Uses) of the City Zoning Ordinance. On

August 16, 2013 Mercer submitted a seventh application, which was rejected by Zampogna on the same grounds.

Mercer avers that it explored the possibility of seeking variances from the Board of Zoning Appeals ("BZA") pursuant to Section 608(8) of the Zoning Ordinance, but was dissuaded from participating therein because the ordinance was "wholly subjective" in that it states that the BZA "may" grant a variance. Accordingly, Mercer has been unable to post the proposed signs and Mercer and others who may have advertised on the signs have been unable to disseminate their desired messages. Mercer contends that it and the landowners have suffered financial damages from lost revenues.

The First Amended Complaint asserts that the sign regulations: (1) violate the First Amendment to the United States Constitution; (2) violate the Fourteenth Amendment to the United States Constitution (equal protection and due process); and (3) constitute a de facto ban on off-premises messages, in violation of the Pennsylvania Constitution. Mercer seeks a declaration that the regulations are unconstitutional "both facially and as applied" in addition to injunctive relief, monetary damages and counsel fees. Mercer also seeks an order from the Court which would direct Hermitage to permit Mercer to erect the signs for which it has applied.

Standard of Review

Hermitage cited Fed. R. Civ. P. 12(b)(6) as the basis for its motion to dismiss. In reality, however, Hermitage challenges this Court's subject-matter jurisdiction. Thus, the motion to dismiss should have been based on Fed. R. Civ. P. 12(b)(1). The Court will nevertheless accept the factual allegations in the First Amended Complaint as true and will view them in the light

most favorable to Mercer. Neither party has sought to introduce jurisdictional evidence or requested a hearing.

Legal Analysis

Hermitage contends that this case should be dismissed because Mercer failed to exhaust its administrative remedies under the Pennsylvania Municipal Planning Code ("MPC"). In the alternative, Hermitage contends that this case is not "ripe" because Mercer has failed to obtain a final decision from the BZA. In addition, Hermitage contends that Mercer lacks standing to asserts claims on behalf of the unnamed property owners.

In response, Mercer argues that there is no duty to exhaust administrative remedies prior to filing the § 1983 constitutional claims in Counts 1 and 2 and that its claims are ripe. Mercer also argues that there is no duty to exhaust administrative remedies prior to asserting the facial challenge under the Pennsylvania Constitution in Count 3. Mercer represents that it is not seeking damages on behalf of other parties. In its reply brief, Hermitage clarified that its ripeness challenge to Counts 1 and 2 is based on the doctrine of "finality" rather than "exhaustion of administrative remedies."

    A. Intra-circuit Conflicts

As to the federal constitutional claims asserted by Mercer in Counts 1 and 2, the Court must reconcile the apparent conflicting opinions of the United States Court of Appeals for the Third Circuit. In *Pardini v. Allegheny Intermediate Unit,* 524 F.3d 419, 426 (3d Cir. 2008), the Court summarized the principles which govern this task:

> "[t]his Circuit has long held that if its cases conflict, the earlier is the controlling authority and the latter is ineffective as precedents." *United States v. Rivera*, 365

> F.3d 213, 213 (3d Cir. 2004) (declining to use the standard of review set forth in a case within the circuit because that case "never acknowledged that the precedents [within the circuit] used [a different standard of review]" and did not "explain why [the Court] broke with those precedents*"); see also Holland v. N.J. Dep't of Corrections*, 246 F.3d 267, 278 (3d Cir. 2001) ("[T]o the extent that [a case within the circuit] is read to be inconsistent with earlier case law, the earlier case law ... controls"); *O. Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir. 1981) ("[A] panel of this court cannot overrule a prior panel precedent. To the extent that [the later case] is inconsistent with [the earlier case, the later case] must be deemed without effect.") (internal citations omitted).

*See also* Third Circuit IOP 9.1. In sum, the holding in the earlier precedential panel opinion trumps an inconsistent holding in a later panel opinion.

### B. Ripeness – General Principles

The primary issue at this stage of the case is whether Mercer's constitutional challenges to the Hermitage billboard ordinance are ripe for judicial determination. The ripeness doctrine is one manifestation of the limitation in Article III of the United States Constitution, which only empowers federal courts to decide "cases and controversies." *See Felmeister v. Office of Atty. Ethics, Div. of N.J. Admin. Office of Courts*, 856 F.2d 529, 535 (3d Cir. 1988). Ripeness considerations are sufficiently important that the Court would have been required to raise the issue sua sponte, if Hermitage had not done so. *Id.* Ripeness primarily tests timing, i.e., whether the alleged injury has occurred or is instead speculative, ill-defined or otherwise premature. "Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *Felmeister*, 856 F.2d at 535. "Even when the constitutional minimum has been met, however, prudential considerations may still counsel judicial restraint." *Id.* (citation omitted).

In *Bank of America, Nat. Ass'n v. Martin,* 2013 WL 5128840 at *6 (M.D. Pa. September 12, 2013), the Court recently provided a concise summary of the applicable ripeness tests:

4

> The Court of Appeals for the Third Circuit has identified three factors by which to evaluate the ripeness of a declaratory judgment action: (1) the adversity of the interests of the parties; (2) the conclusiveness of the judicial judgment; and (3) the practical help or utility of that judgment. *Step–Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647–650 (3d Cir. 1990); *cf. Abbott Labs*, 387 U.S. at 149 (setting forth a two-pronged inquiry); *Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n. 4 (3d Cir. 1998) (noting that the Third Circuit has employed both the three-part *Step–Saver* test and the two-part *Abbott Labs* test as alternative means to the same end).

The first prong of the ripeness test considers whether the claim presents a real and substantial threat of harm or instead involves uncertain events. The second prong of the ripeness test considers whether the declaration sought would be based on "a real and substantial controversy admitting of specific relief through a decree of a conclusive character" or instead "an opinion advising what the law would be upon a hypothetical state of facts." The third prong of the test requires the court to assess the utility of the requested declaration. A case should not be considered justiciable unless the court is convinced that by its action a useful purpose will be served. Even if a declaratory judgment would clarify the parties' legal rights, it should ordinarily not be granted unless the parties' plans of action are likely to be affected. *See generally Id.* at *6-8 (citations omitted). In *Felmeister*, the Court summarized that the ripeness doctrine implicates two competing concerns: (1) the fitness of issues for judicial review; and (2) the hardship to the parties if judicial consideration is withheld. 856 F.2d at 535. Ripeness issues should ordinarily be decided at the motion to dismiss stage. *Taylor Investment, Ltd. v. Upper Darby Twp.*, 983 F.3d 1285, 1290 (3d Cir. 1993)

    C. Need for Finality in Land-Use Decisions

Courts have generally imposed a particularly stringent standard for ripeness in cases involving challenges to land-use or zoning decisions. In *Taylor*, the Court held that § 1983

5

claims based on alleged violations of substantive due process, procedural due process and equal protection rights under the Fourteenth Amendment arising out of a zoning dispute were not ripe. The Court of Appeals explained: "The Supreme Court has held that such [§ 1983] challenges are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Id.* at 1290 (citing *Williamson Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985)). The *Taylor* Court acknowledged that a plaintiff need not exhaust administrative remedies prior to filing § 1983 claims, but explained that "exhaustion" is conceptually distinct from the "finality" concern (i.e., whether the zoning decisionmaker had arrived at a definitive position that inflicts actual, concrete injury) which underlies the ripeness analysis. *Id.* at n. 10. *Taylor* read *Williamson*, a Fifth Amendment "takings" case, as having held that "plaintiff's claim was premature because it had neither sought a variance from the new regulations nor pursued compensation through appropriate state procedures." *Id.* at 1291. *Taylor* then explained that "in the context of land-use decisions," the Supreme Court precedents "require state zoning authorities be given an opportunity to arrive at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question before its owner has a ripe constitutional challenge based on the disputed decision." *Id.* As reiterated by Judge Scirica in *Taylor*: "This finality rule recognizes that, with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner." *Id.* The Court then noted several prudential and institutional considerations which underly the rigorous "finality" requirement, including concerns with usurpation of local authority and the superior ability of local political bodies to balance the broad spectrum of competing interests. In sum, the Supreme Court has

erected "imposing barriers" to prevent federal courts from becoming the "Grand Mufti of local zoning boards." *Id.*

The *Taylor* Court determined that the initial zoning officer performed an "inflexible ministerial duty" which did not represent a final decision. *Id.* at 1292. "Only the zoning hearing board's determination is a 'final adjudication' under the terms of the [MPC]." *Id.* The Court explained that the zoning hearing board owed no deference to the initial decision of the zoning officer and would have been free to override it. Thus, as *Taylor* interpreted Supreme Court precedent, the zoning hearing board must make a determination on the plaintiff's application before the § 1983 claims are ripe, even if the land-use decision may cause constitutional injury. *Id.* at 1293-94. The Court commented: "the flexibility inherent in local zoning systems is obviously useless if the property owners abandon their applications after rejection by civil servants with narrow authority and before seeking relief from a body with broader powers." *Id.* at 1294 n.16 (citation omitted).

In *Taylor*, the Court was specifically asked to decide "whether the finality rule applies to challenges to land-use decisions under any constitutional theory or only takings-type claims." The Court did not answer this question conclusively. It merely held that the finality rule applied to each of the substantive due process, procedural due process and equal protection claims raised by Plaintiff in that case. *Id.* The Court did not make a distinction between facial and "as applied" claims.

*Felmeister*, 856 F.2d at 529, involved a First Amendment challenge to an attorney advertising rule promulgated by the New Jersey Supreme Court.[1] The Third Circuit Court of Appeals stated that this constitutional challenge resembled that in *Williamson*, 473 U.S. at 172,

---

[1] The opinion did not specify whether the plaintiffs raised a facial or "as applied" challenge, although it appears that they objected to the actual language of the rule.

7

which the Supreme Court had held to be premature for lack of a final zoning decision. The *Felmeister* Court explained that although *Williamson* involved Fifth and Fourteenth Amendment claims, "whereas plaintiffs in the instant case mount a first amendment attack," the Court did not "view this difference as dispositive for purposes of analysis of the ripeness question." *Id.* at 536. The *Felmeister* Court opined that the finality requirement of the ripeness analysis applied with full force to plaintiffs' First Amendment challenges to the attorney advertising rule, concluded that the harm to plaintiffs' commercial interests was outweighed by the unfitness for review and held that the claims were not ripe, even assuming that the plaintiffs had withdrawn certain advertisements. *Id.* at 537-38.

In summary, in *Taylor* the Third Circuit established a stringent ripeness standard for constitutional challenges to zoning decisions. In *Felmeister*, the Third Circuit held that a First Amendment challenge was not ripe.

### D. Exception for First Amendment Challenges

Notwithstanding these authorities, the Court of Appeals for the Third Circuit created an exception to the "finality" requirement for First Amendment claims in *Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003). The sympathetic plaintiff in that case was a homeowner who had been repeatedly cited over a ten-year period for displaying an illuminated religious sign in her front yard. Ms. Peachlum filed facial and "as-applied" challenges to a municipal sign ordinance under the Free Exercise and Equal Protection clauses. Peachlum had not obtained a final order from the zoning board because the City required her to pay a $350 fee in order to appeal the decision of the zoning officer, which she could not afford. *Id.* at 438. Two judgments had been entered against Peachlum levying over $1,000 in fines and costs. *Id.* at 437.

The *Peachlum* Court rejected the City's ripeness argument and noted: "the issue raised here involves not the enforcement of an ordinary municipal regulation but one concerning both a facial and "as applied" First Amendment challenge to the City ordinance."[2] *Id.* at 434. The Court explained: "A First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard." *Id. Accord County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (facial "takings," substantive due process and equal protection challenges to zoning ordinance were ripe). The *Peachlum* Court noted concerns with the chilling effect of such laws, the stringent analysis applicable to yard signs, that there was a "prior restraint" on speech, and the relaxed standard applicable to pre-enforcement challenges stemming from the concern that a person will comply with an illegitimate statute to avoid prosecution. *Id.* at 435, 439. The Court further recognized prudential considerations when a dispute was being pursued administratively. The *Peachlum* Court then distinguished facial and "as-applied" claims. It opined that facial First Amendment challenges are "not normally subject to administrative finality analysis under any circumstances." On the other hand, there may be "some value" in obtaining administrative finality for an "as-applied" challenge. The Court did not hold that the finality doctrine applied to such claims; rather, it held that Peachlum's claims were ripe in any event because the "interim decision of the zoning authorities has been formalized and its effects felt in a concrete way." *Id.* at 437.

The *Peachlum* Court then held that "a facial First Amendment challenge may be deemed ripe even during the pendency of an administrative proceeding." *Id.* The Court explained that

---

[2] A facial attack tests a law's constitutionality based on its text alone. An "as-applied" challenge contends that the application of a law to a particular person under particular circumstances deprived that person of a constitutional right. *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

facial claims vindicate the rights of many would-be speakers. Although administrative action might resolve the issues regarding one particular sign, the rights of others may go untested. *Id.*

The *Peachlum* Court specifically attempted to reconcile the prior circuit opinions in *Taylor* and *Felmeister*. The Court distinguished *Taylor* by noting that Peachlum had been effectively barred from appealing. Moreover, the Court commented that "extending *Taylor* to **facial** free speech matters is contrary to our precedent." *Id.* at 439 (emphasis added). The *Peachlum* Court acknowledged that *Felmeister*, 856 F.2d at 531, had held that a First Amendment claim was not ripe. The *Peachlum* Court distinguished *Felmeister* on three grounds: (1) in *Felmeister* the plaintiffs had "failed to avail themselves of a relatively simple way of determining whether their speech runs afoul of the rule"[3]; (2) in *Peachlum*, the City had erected a "substantial barrier" to invocation of its appeal mechanism; and (3) in *Felmeister*, the plaintiffs "were not fined or threatened with civil actions as was Peachlum." *Id.*

The Court held that Peachlum's claims were ripe for disposition. The case was remanded to the district court for resolution of the substantive constitutional issues. The *Peachlum* Court further explained that because "Peachlum's free speech, Free Exercise, and Equal Protection claims are all interrelated, the District Court should address all of these outstanding substantive claims together on remand, in the interests of judicial economy." *Id.* at 440 n.11. In short, both parties can point to precedential Third Circuit case law in support of their respective positions.

E.  Persuasive Authorities

Several other persuasive authorities shed light on the issues in this case. In *Kushi v. Romberger*, 2013 WL 5630920 (3d Cir. October 16, 2013) (non-precedential), the Third Circuit

---

[3] Specifically, plaintiffs challenging a New Jersey attorney advertising rule could have obtained an advisory opinion from the ethics committee.

recently affirmed a decision which held that claims under the First and Fourteenth Amendments were not ripe because the plaintiff had failed to obtain a final decision regarding his application for an amended birth certificate or avail himself of the appeal process. The *Kushi* Court cited *Peachlum*, but relied primarily on *Felmeister* in concluding that prudential concerns did not warrant judicial consideration of Kushi's claim.

Other courts are split when deciding factually similar First Amendment challenges to billboard ordinances. In *Nittany Outdoor Advertising, LLC v. College Twp.*, 2013 WL 160225 (M.D. Pa. January 15, 2013), the Court followed *Peachlum* and held that there was no finality prerequisite to a facial First Amendment challenge. However, the Court expressed concerns stemming from the "sweeping language of *Peachlum*" and noted the prudential consideration that its ruling "may very well expedite pending efforts to amend the present ordinance." *Id.* at *2. The Eleventh Circuit has reached the opposite result, and has held that First Amendment claims are not ripe absent a final decision of the zoning board regarding the pending billboard applications. *See National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005) (as-applied claims); *see also Digital Props., Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir.1997) (facial and as-applied First Amendment claims of adult book store to zoning ordinance not ripe absent final zoning decision). *Digital* was cited in *Peachlum* as a contrary decision.

Also of note, the Supreme Court has emphasized that a less demanding standard applies to cases, like this one, which affect commercial speech. *See, e.g. Knox v. SEIU*, 132 S.Ct. 2277, 2289 (2012). The Hermitage ordinance does not directly restrict Mercer's speech; rather, it regulates the manner in which Mercer is able to sell billboard space to customers who wish to proclaim messages.

11

F. Application to the Claims in this Case

It is too facile to characterize this case as either a "land use" case or a "First Amendment" case – it is both. Despite the sweeping language in *Taylor* and *Peachlum*, the holdings of those cases can largely be harmonized. It is more difficult to reconcile the analytical approaches of *Felmeister* and *Peachlum* as to the need for finality in First Amendment claims. In applying circuit precedent, as discussed above, the Court concludes: (1) the facial First Amendment challenge in Count 1 is fit for judicial determination, per *Peachlum*; (2) the as-applied First Amendment challenge in Count 1 is not yet fit because this case is factually similar to *Felmeister* in that a readily available avenue for finality exists; and (3) the Fourteenth Amendment claims in Count 2 are not fit for decision because the holding in *Taylor* trumps the contrary suggestion in *Peachlum* footnote 11. The "fitness" of the claims for judicial determination does not end the analysis, however, because the ripeness test also encompasses a hardship (prudential) prong. The Court turns now to those prudential concerns.

G. Prudential Considerations

In *Felmeister*, the Third Circuit observed: "it is settled that in order for the parties' hardship to be sufficient to overcome prudential interests in deferral, that hardship must be both immediate and significant." 856 F.2d at 537. The prudential considerations in this case weigh heavily against Mercer. As noted in *Peachlum*, judicial economy would best be served by trying all of Mercer's claims at the same time. It is readily apparent that the "as applied" claims are not fit for judicial review because there is no final zoning decision. Proceeding at this juncture with only a facial challenge does not appear to be a promising avenue to resolve this dispute, as Mercer also seeks declaratory relief regarding the seven pending applications. If Mercer is

12

unsuccessful in a facial challenge, it would presumably continue to pursue its "as-applied" challenge to the seven pending applications. Moreover, facial challenges face a very difficult standard. *United States v. Stevens*, 559 U.S. 460, 472-73 (2010). In *Interstate Outdoor Advertising, L.P. v. Zoning Bd. of Tp. of Mount Laurel*, 706 F.3d 527 (3d Cir. 2013), the Third Circuit recently upheld the constitutionality of an ordinance that banned all billboards.

There is minimal hardship to Mercer from requiring finality. Mercer is not under threat of fine or prosecution. An appeal procedure to the BZA is readily available and Mercer has not asserted any inability to pursue that avenue. *See McKay Brothers, LLC v. Zoning Bd. of Adjustment of Tp. of Randolph*, 2013 WL 1621360, *2+ (D.N.J. April 12, 2013) (rejecting contention that appeal was futile, citing *Felmeister*). Mercer has simply refused to avail itself of this relatively simple method of obtaining finality. *See Peachlum*, 333 F.3d at 439. All of the prudential concerns articulated in *Taylor* regarding court intervention in local zoning disputes apply with full force to the facts and circumstances of this case.

The Court will assume that the parties are sufficiently adverse. However, the controversy is not yet fully defined. A judicial decision at this time is unlikely to be conclusive or of substantial practical utility. Mercer's claims are based on uncertain events and may be rendered moot by a final decision of the BZA. Mercer's First Amendment interests are outweighed by this unfitness for review. *See Felmeister*, 856 F.2d at 537-38. Mercer can obtain a final zoning decision and then, if necessary, re-submit all of its constitutional challenges (both facial and "as applied") to the Court. In summary, the Court concludes that Mercer's federal constitutional claims in Counts 1 and 2 are not ripe for judicial determination at this time.

H. Pendent State Law Claim

In Count 3 of the First Amended Complaint, Mercer asserts a claim based on the Pennsylvania constitution and asks the Court to exercise supplemental jurisdiction. The parties dispute the ripeness of Count 3 based on Pennsylvania law.

Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals has stated that "the district court must decline the ... state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (*quoting Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

As explained above, the Court is dismissing Plaintiff's federal claims for lack of ripeness. There are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claim.[4] Once all federal claims have been removed from the case, the case should either be dismissed or transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons.Stat. Ann. § 5103(b). *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992). Accordingly, the Court will decline to exercise supplemental jurisdiction and this case will be dismissed without prejudice to Mercer's ability to refile in an appropriate Pennsylvania court or in the federal court after obtaining a final decision of the BZA.

---

[4] The Court expresses no opinion as to whether Count 3 is ripe under Pennsylvania law.

I. Conclusion

In accordance with the foregoing, the MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 12) will be **GRANTED**. The First Amended Complaint will be dismissed without prejudice and the clerk will mark this case closed.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERCER OUTDOOR ADVERTISING, LLC,<br>Plaintiff,<br><br>v<br><br>CITY OF HERMITAGE, PENNSYLVANIA,<br>Defendant. | 2:13-cv-1041 |

### ORDER OF COURT

AND NOW, this 11th day of December, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Defendant's MOTION TO DISMISS AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) (ECF No. 12) is **GRANTED** and the First Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**. The clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **All counsel of record**
**Via CM/ECF**